UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| BAM NAVIGATION, LLC, | Case No. 20-CV-1345 (NEB/ECW) |
| Plaintiff, | |
| v. | ORDER ON MOTION TO COMPEL ARBITRATION AND DISMISS PLAINTIFF'S COMPLAINT |
| WELLS FARGO & CO. and WELLS FARGO BANK N.A., | |
| Defendants. | |

In April 2020, BAM Navigation, LLC ("BAM"), a Minnesota consulting company, applied through Defendant Wells Fargo Bank N.A. ("Wells Fargo") for a Paycheck Protection Program ("PPP") loan.[1] (ECF No. 1 ("Compl.") ¶¶ 8, 37.) BAM never received a loan. (*Id.* ¶¶ 39–40, 45.) It then brought this suit, on behalf of itself and a putative class, alleging that it did not receive a PPP loan because Wells Fargo impermissibly prioritized applications that sought larger loans. (*Id.*, *passim*.) This matter is currently before the Court on Wells Fargo's Motion to Compel Arbitration and Dismiss Plaintiff's Complaint. (ECF No. 24.) For the reasons that follow, the Court grants Wells Fargo's Motion to Compel Arbitration.

---

[1] BAM also named Wells Fargo Bank N.A.'s parent company, Wells Fargo & Co., as a defendant.

## BACKGROUND

*A. BAM's Wells Fargo Account*

In 2010, Brian A. McGee, on behalf of BAM, applied for a business account at Wells Fargo. (ECF No. 27-1 ("Application").) The third page of the Application provides a list of terms and conditions and states that the signatory, by using a Wells Fargo account or service, agrees to those terms. (*Id.* at 3.) Under these terms of the Application, the account holder agrees to be bound by an "account agreement that includes the Arbitration Agreement." The applicant also acknowledges receipt of the account agreement. (*Id.*) The Application then briefly summarizes the account agreement's arbitration provision. (*Id.*)

McGee signed the Application for BAM and opened an account under these terms. The account agreement in effect at the time BAM opened the account was the 2010 Business Account Agreement. (ECF No. 27-8 ("2010 Account Agreement"); ECF No. 26 at 6.) In 2019, Wells Fargo issued an updated account agreement, which became binding on BAM by virtue of a provision in the 2010 Account Agreement that permitted Wells Fargo to modify the account agreement. (ECF No. 27-7 ("2019 Account Agreement"); 2010 Account Agreement at 32.) Both Account Agreements contain an arbitration agreement, requiring that most disputes between an account holder and Wells Fargo be arbitrated. (2019 Account Agreement at 6; 2010 Account Agreement at 4.)

### B. Paycheck Protection Program

In response to the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") in March 2020. (Compl. ¶ 12.) The CARES Act established the PPP, which was designed to provide financial assistance to businesses and employees to mitigate the economic effects of the pandemic. (*Id.* ¶¶ 13–14.) PPP funds were specifically intended to be used by businesses to cover payroll expenses, and loans were to be forgiven if the funds were predominantly used for this purpose. (*Id.* ¶ 14.)

Under the CARES Act, the Small Business Administration ("SBA") has rulemaking authority regarding the administration of the PPP. (*Id.* ¶¶ 15–16.) Roughly a week after the CARES Act was enacted, the SBA issued an interim final rule, which provided details about how the PPP would be administered. (*Id.* ¶ 15.) BAM claims that this rule imposes a requirement (including upon Wells Fargo) that PPP lenders process PPP applications on a first-come, first-served basis. (*Id.* ¶¶ 16, 29, 58, 70–71, 94, 97, 110–11.)

### C. BAM's Application for a PPP Loan

Soon after the CARES Act was enacted, Wells Fargo communicated to the public that it would be accepting applications for PPP loans. (Compl. ¶¶ 30–31, 34.) BAM decided to apply for a PPP loan through Wells Fargo because it already held an account there. (*Id.* ¶ 36.) Wells Fargo required PPP applicants to first opt into an "application queue," which BAM did on the first possible day. (*Id.* ¶ 37.) Roughly a week later, Wells

3

Fargo notified BAM that it could fill out an application; BAM did so the following day. (*Id.*) Later that day, Wells Fargo informed BAM that PPP funds had run out. (*Id.* ¶ 39.) Congress later provided additional funding for PPP loans, but BAM has still not heard from Wells Fargo regarding the status of its application. (*Id.* ¶¶ 41, 45.) BAM has not received a PPP loan.

### D. *Procedural History*

BAM filed this action in June 2020, alleging that Wells Fargo's statements about its processing of PPP loans were fraudulent and misleading and that Wells Fargo did not process PPP loans on a first-come, first-served basis, as BAM claims SBA regulations required. (Compl.) BAM brings claims on behalf of itself and on behalf of a purported class. (Compl. ¶ 46.) These claims include violations of Minnesota's Uniform Deceptive Trade Practices Act, False Statements in Advertising Act, and Prevention of Consumer Fraud Act, as well as fraudulent concealment, breach of fiduciary duty, negligence, and unjust enrichment. (Id. ¶¶ 54–119.)

Wells Fargo then brought this Motion to Compel Arbitration and Dismiss Plaintiff's Complaint, arguing that BAM agreed to submit this dispute to arbitration, that BAM lacks standing, and that BAM fails to state a claim. (ECF No. 24.)

## ANALYSIS

A motion to compel arbitration is to be analyzed as either a Rule 12(b)(6) motion or a Rule 56 motion, depending on whether the court considers matters outside of the

pleadings. *Seldin v. Seldin*, 879 F.3d 269, 272 (8th Cir. 2018); *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 882 (8th Cir. 2017); *see also* Fed. R. Civ. P. Rule 12(d). Because the Court considers matters outside of the pleadings, it treats this motion as one for summary judgment.

## I. Standing

Wells Fargo contends that BAM lacks standing. (ECF No. 26 at 10–12.) Standing is a jurisdictional issue, and if BAM lacks standing, the Court does not have subject matter jurisdiction to hear this case. *Disability Support All. v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018); *S.D. Farm Bureau, Inc. v. Hazeltine*, 340 F.3d 583, 591 (8th Cir. 2003).

The jurisdiction of federal courts is limited to cases and controversies. U.S. Const. art III, § 2; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). Standing is a jurisdictional requirement "rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Under the familiar three-part standing inquiry, plaintiffs must show that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (citing *Lujan*, 504 U.S. at 560–61).

BAM has met all three prongs. It has suffered an injury by being denied a PPP loan, which would have "enabled it to survive the current economic crisis." (Compl. ¶ 40.) Contrary to Wells Fargo's assertion, this injury is concrete and is not impermissibly speculative. A concrete injury is one that "actually exist[s]." *Spokeo*, 136 S. Ct. at 1548.

5

BAM applying for—and not receiving—a PPP loan is not an "abstract" injury; it is one that actually exists. *Id.* Similarly, recognizing this injury requires no speculation, as the harm has already occurred. BAM has also pled that its injury was caused by Wells Fargo; it has alleged that Wells Fargo, allegedly in contravention of the SBA rules, prioritized larger loans, and as a result, BAM's application was not processed before funds ran out. (Compl. ¶¶ 21–29, 40.) Finally, BAM seeks damages, which would redress its claimed injuries. (Compl. at 24.) BAM has therefore met all three standing prongs.

## II. Valid Arbitration Agreement

To determine whether to compel arbitration, a court must "ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement." *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). An agreement to arbitrate is "valid, irrevocable, and enforceable," and if the parties have made such an agreement, a court can compel arbitration. 9 U.S.C. §§ 2, 4. It is a "foundational Federal Arbitration Act principle" that "arbitration is strictly a matter of consent"—the parties must have agreed to arbitrate. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019) (cleaned up). The threshold question, then, is whether the parties agreed to arbitrate. Here, they have.

Before addressing contract formation, the Court must first determine which arbitration provision is operative. There are three possibilities: the Application,[2] the 2010 Account Agreement, and the 2019 Account Agreement. By signing the Application, BAM agreed to be bound by the Account Agreement. (Application at 3.) At the time BAM opened the account, the 2010 Account Agreement was in effect, but by the time BAM applied for the PPP loan, the 2019 Account Agreement had supplanted the 2010 version. Since the 2010 Account Agreement permitted Wells Fargo to modify the Account Agreement, (2010 Account Agreement at 32), the 2019 Account Agreement governs here.

## A. Contract Formation

BAM argues that it cannot be bound by either of the Account Agreements because it never signed them and claims it may have never received them. (ECF No. 34 at 7, 9.) But when a contract incorporates another document by reference, a party cannot avoid its obligations under the incorporated document by claiming it did not read or receive it. *Nielsen v. Grain Millers, Inc.*, 2017 WL 11569190, at *4 (D. Minn. May 2, 2017) (citing *Gartner v. Eikill*, 319 N.W.2d 397, 398 (Minn. 1982)).

The general rules for incorporating a document by reference do not change for arbitration agreements. In *Siebert v. Amateur Athletic Union of the United States*, the court enforced an arbitration agreement when the party resisting arbitration read and signed

---

[2] Although not briefed, Wells Fargo claimed at the hearing that the Application could, on its own, constitute an agreement to arbitrate.

7

membership cards stating that the party agreed to be bound by certain rules and policies, including an arbitration clause. 422 F. Supp. 2d 1033, 1040 (D. Minn. 2006). The court found that the membership cards gave the party resisting arbitration actual notice of the arbitration agreement. *Id.* Similarly, here, BAM read and signed the Application, which put BAM on notice not only of the Account Agreement, but also the fact that it contained an arbitration agreement. (Application at 3.) At least one other court has enforced Wells Fargo's arbitration provision on this basis. *Marselian v. Wells Fargo & Co.*, No 20-cv-3166-HSG, 2021 WL 198833, at *3–*5 (N.D. Cal. Jan. 20, 2021).

### B. Mitchell v. Wells Fargo

BAM heavily relies on a District of Utah case, *Mitchell v. Wells Fargo*, for the proposition that the arbitration agreement is unenforceable. 280 F. Supp. 3d 1261 (D. Utah 2017); (ECF Nos. 27-9, 34 at 8–9). In *Mitchell*, the court compared the language of Wells Fargo's account application and its business account agreement and found that there may not have been a meeting of the minds between the plaintiffs and Wells Fargo. 280 F. Supp. 3d at 1286–87. There, as here, the application stated that the arbitration provision covered disputes related to the customer's use of the account, while the account agreement covered any dispute "arising out of or relating in any way" to a Wells Fargo account or service. *Id.* at 1286. Because the arbitration provision in the application and the account agreement differed, the court reasoned that the consumer may not have had a "definite understanding of the essential terms" of the arbitration agreement. *Id.* As a result, the

court ordered a summary trial to determine whether there was a meeting of the minds. *Id.* at 1287.

Several aspects of this case distinguish it from *Mitchell*. First, the Court is not faced with the same conflict as the *Mitchell* court. In *Mitchell*, the differing arbitration language in the application and account agreement was critical because it was likely that only the account agreement's arbitration provision applied to the dispute. *See Patterson v. Lear Capital, Inc.*, No. 20-CV-251-DAK-CMR, 2020 WL 6081897, at *4 (D. Utah Oct. 15, 2020) (recognizing that *Mitchell* was a "unique case" because it concerned unauthorized accounts and that cases involving authorized accounts would be "much simpler"). This is not an issue here. Second, unlike the *Mitchell* court, this Court does not view the arbitration language in the Application as a standalone arbitration provision. The Application states that BAM "agree[s] to be bound by . . . [the] [A]ccount [A]greement that includes [an] Arbitration Agreement," and goes on to summarize the arbitration agreement. (Application at 3.) The mention of arbitration in the Application merely serves to notify the applicant that the Account Agreement contains an arbitration provision. As such, the mention of the arbitration agreement in the Application and the arbitration provision in the 2019 Account Agreement are not at odds,[3] and the Court will not refuse

---

[3] Other courts have come to the same conclusion regarding the lack of conflict between the Wells Fargo's application and account agreement. *See Jeffries v. Wells Fargo & Co.*, No. 16-cv-1987-LSC, 2017 WL 3149513, at *3 (N.D. Ala. July 25, 2017) (identifying no conflict between the Consumer Account Application and Customer Account Agreement and enforcing the arbitration provision, even though plaintiffs never received a copy of the

9

to enforce the arbitration agreement in the 2019 Account Agreement for lack of mutual assent.[4]

### C. Unconscionability

BAM also argues that the arbitration agreement in the 2019 Account Agreement is unconscionable. (ECF No. 34 at 10–11.) Under the Federal Arbitration Act ("FAA"), an agreement to arbitrate may be invalidated based on "generally applicable contract defenses," such as unconscionability. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). The FAA, however, preempts state laws that discriminate against arbitration. *Id.* (citing *Concepcion*, 563 U.S. at 341). Under Minnesota law, a party claiming that a contract is unconscionable must establish that he or she had "'no meaningful choice but to accept the contract terms as offered'" and that the terms of the contract were "'unreasonably favorable to the other party.'" *TEM Capital, LLC v. Leonard*, Nos. A13-0158, A13-0215, 2013

---

Customer Account Agreement). Although *Jeffries* dealt with consumer accounts, the language in the application and account agreement are similar to the language here, and so is the structure of the application incorporating a separate account agreement. *See id.* at *1.

[4] BAM, at the hearing, noted that the *Mitchell* court ordered a summary trial and argued that discovery may help determine what BAM understood the terms of the arbitration agreement to be. In *Mitchell*, the court concluded that testimony would help establish whether there was a meeting of the minds between the account holders and Wells Fargo in light of the conflict between the arbitration provisions in the application and account agreement. 280 F. Supp. 3d at 1286–87. Since the Court finds that the Application and the 2019 Account Agreement are not in tension, there is no need for testimony or other factual development on this issue.

WL 6152186, at *4 (Minn. Ct. App. Nov. 25, 2013) (quoting *Dorso Trailer Sales, Inc. v. Am. Body & Trailer, Inc.*, 372 N.W.2d 412, 415 (Minn. Ct. App. 1985)). BAM has established neither.

BAM argues that the arbitration agreement is unconscionable because it and Wells Fargo were in unequal bargaining positions. (ECF No. 34 at 10.) Even assuming there was a disparity in bargaining power, this is not enough, by itself, to establish that the contract was procedurally unconscionable. *See Takacs v. Guardian Life Ins. Co. of Am.*, No. 03-CV-2562 (ADM/JSM), 2004 WL 1260109, at *7 (D. Minn. June 8, 2004) (citing *Vierkant v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996) ("[A] contract is not unconscionable merely because the parties to it possess unequal bargaining power."). BAM could have instead opted not to open an account at Wells Fargo.  BAM mistakenly argues that the circumstances of the pandemic make the arbitration agreement unconscionable. But unconscionability is not gauged at the time the dispute arises, but rather at the time the parties formed the contract. Minn. Stat. § 336.2-302; *Kiefer v. Simonton Bldg. Prods., LLC*, No. 16-CV-3540, 2017 WL 1380497, at *3 (D. Minn. Apr. 17, 2017) (applying Minnesota law). As such, uncertainty arising from the pandemic cannot be the basis for procedural unconscionability.[5]

---

[5] BAM does not separately argue that the arbitration agreement is substantively unconscionable, but if it did, this argument would also fail. A contract is substantively unconscionable when the terms are unreasonably favorable to one party. *TEM Capital*, 2013 WL 6152186, at *4. The arbitration agreement merely required BAM to arbitrate its claims against Wells Fargo. The main disadvantage to BAM is that it cannot bring its

11

Since BAM assented to the agreement to arbitrate, *Mitchell* is inapplicable, and the agreement is not unconscionable, the Court finds that the parties have agreed to arbitrate.

### D. *Wells Fargo & Co.*

Before addressing the issue of whether this dispute is within the scope of the arbitration agreement, the Court must determine which parties may enforce the agreement. Wells Fargo Bank N.A. and Wells Fargo & Co. jointly move to compel arbitration, but only Wells Fargo Bank N.A. is a party to the 2019 Account Agreement. (*See* 2019 Account Agreement at 1 (defining "Wells Fargo" as Wells Fargo Bank, N.A.), 6 (explaining that the arbitration agreement applies to disputes between Wells Fargo and the account holder).) Thus, there is doubt whether Wells Fargo & Co. may enforce the 2019 Account Agreement's arbitration provision.

State contract law is used to determine whether a nonsignatory may enforce an arbitration agreement. *PRM Energy Sys. v. Primenergy, L.L.C.*, 592 F.3d 830, 833 (8th Cir. 2010). In Minnesota, a nonsignatory may force a signatory to arbitrate when there is a close relationship between the signatory and nonsignatory parties and when there are allegations that they engaged in "interdependent and concerted misconduct." *ev3 Inc. v.*

---

claims in its preferred forum, but this does not rise to the level of bring substantively unconscionable. *See Peterson v. Deeb*, No. A13-2259, 2015 WL 1880191, at *6 (Minn. Ct. App. Apr. 27, 2015) ("A contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'") (quoting *In re Estate of Hoffbeck*, 415 N.W.2d 447, 449 (Minn. Ct. App. 1987)).

*Collins*, No. A08-1816, 2009 WL 2432348, at *3 (Minn. Ct. App. Aug. 11, 2009). Here, Wells Fargo Bank N.A., the signatory, and Wells Fargo & Co. are closely related, because Wells Fargo & Co. is the parent company of Wells Fargo Bank N.A. (Compl. ¶¶ 9–10.) Additionally, Wells Fargo & Co. and Wells Fargo Bank N.A. are alleged to have acted in concert. The Complaint draws no distinction between the two entities when making its allegations against them. Therefore, despite not being a signatory to the 2019 Account Agreement, Wells Fargo & Co. may also compel BAM to arbitrate its claims.[6]

### III. Scope of the Arbitration Clause

The final issue is whether the present dispute falls within the scope of the arbitration agreement. Since the parties agreed to submit the issue of whether a certain claim is arbitrable to an arbitrator, the Court finds that this dispute is within the scope.

The scope of an arbitration provision is usually an issue for a court to decide, unless there is "clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014). A "gateway issue," such as whether a certain dispute falls within an arbitration clause, may also be committed to arbitration,

---

[6] In *Marselian*, the Northern District of California confronted a similar quandary—the plaintiff sued Wells Fargo Bank, N.A. and Wells Fargo & Company, and although only Wells Fargo Bank, N.A. was a signatory to the arbitration agreement, both Wells Fargo entities moved to compel arbitration. 2021 WL 198833, at *1, *3. Applying California law, which, on this issue, seems to mirror Minnesota law, the court permitted both Wells Fargo entities to compel arbitration. *Id.* at *3.

and it is treated just like any other arbitration agreement. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Thus, it is "valid, irrevocable, and enforceable" except for in certain circumstances, none of which apply here. 9 U.S.C. § 2. If the parties have delegated the question of whether a certain dispute is arbitrable, a court may not decide this question and must submit it, too, to arbitration. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

The 2019 Account Agreement validly delegates disputes regarding the arbitration agreement's "meaning, application, or enforcement" to the arbitrator. (2019 Account Agreement at 10.) Since the agreement to arbitrate is enforceable, so too is the delegation clause. *Rent-A-Center*, 561 U.S. at 70. Because BAM contests "meaning, application, or enforcement" of the arbitration clause (ECF No. 34 at 11–15), whether BAM's substantive claims fall within the scope of the arbitration agreement is a question for the arbitrator. *Henry Schein*, 139 S. Ct. at 530.

Wells Fargo argues that the Court should dismiss this case, rather than stay it. (ECF No. 26 at 9–10.) The FAA instructs courts to stay proceedings while the parties arbitrate their claims, 9 U.S.C. § 3, but courts sometimes dismiss the case instead when "it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769–70 (8th Cir. 2011) (citation omitted). When a case may not fully resolve a dispute, a stay is appropriate. *Id.* at 770. Because here

the arbitrator may find that BAM's claims do not fall within the arbitration provision, the Court will stay the case.[7]

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.  Wells Fargo Bank N.A. and Wells Fargo & Co.'s Motion to Compel Arbitration (ECF No. 24) is GRANTED.

2.  This action is STAYED pending arbitration.

Dated: February 12, 2020                    BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge

---

[7] Because the Court compels arbitration, it does not reach Wells Fargo's arguments in support of its motion to dismiss.